UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILANA PANICH-LINSMAN, | |
| *Plaintiff*, | **COMPLAINT FOR DAMAGES BASED ON COPYRIGHT INFRINGMENT** |
| v. | |
| WOLVERINE WORLD WIDE, INC., | **Demand for Jury Trial** |
| *Defendant*, | |

Plaintiff Ilana Panich-Linsman ("Plaintiff") for her complaint against Defendant Wolverine World Wide, Inc. ("Wolverine" or "Defendant" or "Merrell"), by and through her undersigned counsel, alleges upon personal knowledge as to her own conduct, and on information and belief based on the investigation of Plaintiff's counsel, as to all other conducted alleged herein, as follows:

### I. INTRODUCTION

1. This is a civil action for copyright infringement against Wolverine, a "global marketer and licensor of branded ... footwear and apparel"[1] and its popular clothing brand, Merrell, which wrongfully copied, displayed, and distributed Plaintiff's copyrighted photo (the "Photo") for advertising purposes without a license or authorization from Plaintiff on Wolverine's commercial Instagram feed and for the purpose of marketing specific products on its Instagram Shop.

2. Plaintiff seeks to recover damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101, 501 *et seq*.

---

[1] https://www.reuters.com/markets/companies/WWW/

## II. JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), 28 U.S.C. § 1400(a), and 35 N.Y.C.P.L.R. §§ 302(a)(3)(i) & 302(a)(3)(ii) because Defendants: (1) regularly and systematically solicit and conduct business in New York; (2) derive substantial revenue from goods sold to consumers in New York; (3) committed an intentional act (copyright infringement) which was expressly aimed at, *inter alia*, the forum state of New York by advertising directly to New York consumers in this District that are followers on Merrell's social media channels, including Instagram; and (4) caused harm to Plaintiff that the Defendants know would likely be suffered in the forum state.

5. This Court has *in personam* jurisdiction over Defendant because the Defendant availed itself of the privileges of conducting business in this District and the State of New York and incurred benefits from infringement, such that this Court's assertion of jurisdiction over Defendant does nothing to offend traditional notions of fair play and due process.

## III. THE PARTIES

6. Plaintiff Ilana Panich-Linsman is a resident of the State of Texas and is represented by photo agency Redux Pictures, LLC with offices at 11 Hanover Square, Floor 26, New York, New York, 10005. She is the sole owner of a copyrighted Photo, that was copied, distributed, and/or displayed by Defendant in violation of her exclusive bundle of rights found in the Copyright Act. The Copyright Registration for Plaintiff's Photo is attached as Exhibit A.

7. Defendant Wolverine World Wide, Inc. is a Delaware corporation that maintains its principal place of business in Rockford, Michigan.

2

8. Defendant is registered as an active Foreign Business Corporation with the New York Department of State, Division of Corporation (DOS ID: 282146), and has been since September 15, 1969, on information and belief, continuously selling goods to New York consumers in the District and targeting those consumers with advertising material, including the Photo, in Merrell advertising campaigns.

9. Defendant, who employs thousands of people across the world, "is a leading designer, marketer and licensor of a broad range of quality footwear and apparel" and sells brand including Merrell, Saucony, Wolverine, Harley Davidson Footwear, Hush Puppies, Sperry, and until recently, Keds.[2]

10. Upon information and belief, the Merrell brand is a wholly owned subsidiary of Defendant Wolverine.

11. Upon information and belief, and according to the Merrell website,[3] Defendant currently operates at least two retail outlets in New York and sells footwear and apparel through numerous third-party retailers in this District alone, a list of which is attached hereto as Exhibit B.

12. Upon information and belief, Defendant also currently sells footwear and apparel to residents of this District directly through its brands' websites (*e.g.*, https://www.merrell.com), its brands' social media accounts (*e.g.*, http://www.instagram.com/merrell/shop), and indirectly through third-party websites (*e.g.*, http://www.amazon.com/stores/page/2F71631A-798F-43A9-BB87-CA265D0073F8/).

---

[2] *Wolverine World Wide, Inc.*, 2022 Annual Report (*Form 10-K*), at 5-7, filed February 24, 2022, *available at*: https://www.wolverineworldwide.com/wp-content/uploads/2023/03/2022-Annual-Report.pdf
[3] www.merrell.com/US/en/content?caid=locally

3

13. Upon information and belief, Defendant purposefully directs commercial advertising toward consumers of this District through various means, including, but not limited to, by promoting products on its brands' Instagram accounts (*e.g.*, www.instagram.com/merrell and www.instagram.com/merrell/shop), for the purpose of transacting business (selling goods) within this District.

14. Upon information and belief, Defendant's deliberate targeting of commercial advertising toward consumers of this District has resulted in it conducting business transactions (selling goods) within this District.

15. Defendant's infringing activity, *inter alia*, also caused injury to Plaintiff in this District because Plaintiff's exclusive photo licensing agency, who maintains Plaintiff's photo archive for licensing purposes, is located in, and operates out of, this District.[4]

16. Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, directors, executives, management, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, executives, management, agents, servants, or employees.

## IV. FACTUAL ALLEGATIONS

**A. The Importance of US Copyright and Bundle of Rights**

---

[4] Plaintiff's exclusive photo licensing agency, Redux Pictures, LLC, is not a party to this case and is not making a claim for damages here, deferring to Plaintiff to seek a remedy for her losses.

17. Copyrights are the legal title to intellectual property by which creators of original works such as photos protect their exclusive moral and economic rights to exploit those works.

18. Respecting and defending the financial value and exploitation rights of creators' copyrighted works is a bedrock of US democracy, considered so important that the Founders enshrined the U.S. Constitution with specific references to copyrights, and which expressly gave Congress the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. Article I, Section 8. "Copyright law encourages people to create original works and thereby 'ultimately serves the purpose of enriching the general public through access to creative works.'" *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994).

19. The United States Supreme Court found that by "establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985).

20. Section 106 of the Copyright Act (the "Act") grants copyright owners the exclusive economic rights and control for value of their works. The Act makes it illegal to reproduce, create derivative works from, distribute, publicly perform, or publicly display copyrighted work except in limited instances, and provides for damages if any of these rights are infringed.

**B. Background on Plaintiff & Her Photo**

21. Plaintiff Ilana Panich-Linsman is an award-winning professional photographer and visual journalist with nearly 20 years of experience.

5

22. Plaintiff's photographs are regularly published in some of the world's leading publications including The New York Times, The Wall Street Journal, The Washington Post, The Boston Globe, Al Jazeera America, AARP, CNN, and NBC News.

23. Plaintiff's work has been recognized by the World Press Photo awards, the Lucie Foundation, the Oso Bay Biennial XVIII, and the Lumix Festival in Hannover, Germany. Her work appeared in the AI-AP American Photo 30 and Fotografia Magazine and has been showcased on The New York Times LENS Blog and on the CNN Photography Blog.

24. Plaintiff is a graduate of New York's International Center of Photography's photojournalism program where she was awarded a Director's Fellowship. She holds a Bachelor of Arts degree from Scripps College (Claremont, Calif.), completed the Eddie Adams Photo Workshop (New York) in 2009, and graduated in 2014 from the University of the Arts, London with a Master of Arts degree in photojournalism and documentary photography.

25. Plaintiff has guest lectured on the topic of photography at Smith College, the University of Texas at Austin, Williams College, Austin Community College, and The University of Massachusetts at Amherst.

26. Plaintiff maintains a professional website at www.ilanapl.com for the purposes of promoting her work as a photographer and for soliciting photography assignments and licensing for her work.

27. Plaintiff entrusts her photographic portfolio to Redux Pictures (www.reduxpictures.com), which serves as her exclusive agent for the licensing of her photographic works.

28.     Plaintiff also maintains a professional Instagram account (@ilanapl) to promote her photography, connect with her audience and the greater photography community, and facilitate the solicitation of photography assignments and licensing opportunities.

29.     Plaintiff has registered the Photo with the United States Copyright Office. It bears the Registration Number VA 2-356-878 and an Effective Date of June 20, 2023. A true and correct copy of the Photo's Registration Certificate is attached hereto as Exhibit A.

**C.  Defendant's Wrongful and Infringing Conduct**

30.     On or about April 2, 2023, Plaintiff, in her capacity as a freelance photojournalist, photographed Iraq war veteran Will "Akuna" Robinson (the "Photoshoot") for an article in the Washington Post (the "Article"). The Article was to explore the therapeutic benefits Mr. Robinson experienced through long-distance hiking as he coped with depression, anxiety and post-traumatic stress disorder following his medical discharge in 2003.

31.     Among the photographs created during the Photoshoot was the Photo:



32.     On or about April 3, 2023, Plaintiff distributed a curated selection of photographs from the Photoshoot, including the Photo, to the Washington Post for use in the Article.

7

33.     The Washington Post article on Will "Akuna" Robinson featuring Plaintiff's photographs was published on April 6, 2023.[5]

34.     On or about April 7, 2023, Plaintiff distributed several photos from the Photoshoot, including the Photo, to Will "Akuna" Robinson along with some basic terms governing their use (i.e., a license):

> On Fri, Apr 7, 2023 at 3:26 PM Ilana Panich-Linsman <ilana.panich.linsman@gmail.com> wrote:
> Hi Akuna,
>
> Thank you again for your time! I had a great time walking with you and Dawn.
> Here are a bunch of photos for you. If you could please credit me when/if you post, and please don't give anyone else permission to share them (but direct them to me for licensing if you want!)
>
> All my best,
> Ilana

35.     On or about April 22, 2023, under the terms of the limited license provided by Plaintiff, Will "Akuna" Robinson shared the Photo to his verified professional Instagram account. Accompanying the post was a caption that credited Plaintiff through the use of a camera emoji followed by "@ilanapl," Plaintiff's Instagram username. This notation is a recognized method of attribution on social media, creating a hyperlink that, when clicked, redirects the viewer to the Instagram profile of the accredited party.

---

[5] https://www.washingtonpost.com/travel/2023/04/06/will-robinson-hiking-war-veteran/



36.     On or about June 1, 2023, Plaintiff became aware that the Photo had been published by an Instagram account with over 450,000 followers that appeared to belong to Defendant's Merrell footwear and apparel brand despite her not having given Defendant or anyone else permission to do so.

 

37.     Plaintiff alleges that despite a validly registered copyrighted Photo, Defendant obtained a copy of Plaintiff's Photo from Will "Akuna" Robinson or elsewhere, and unlawfully uploaded and published that copy for display within a post made to an Instagram account belonging to its Merrell footwear and apparel brand (@Merrell).

38.     Plaintiff further alleges that Defendant secondarily published the Photo on Merrell's Instagram Shop page, wherein Defendant altered the image by embedding product links corresponding to three Merrell products incidentally appearing in the Photo. These links, when clicked, facilitate the direct purchase of the respective product from Merrell's online storefront within the Instagram environment, thereby ostensibly generating profit for Defendant.

10



39. The caption of Defendant's primary Instagram post credited Plaintiff in the exact same format that Will "Akuna" Robinson's post did, a camera emoji followed by Plaintiff's hyperlinked Instagram handle, "@ilanapl."

40. Defendant's secondary Instagram post on its Instagram Shop did not bear any accreditation.

41. Defendant's accreditation of Plaintiff, which hyperlinked to Plaintiff's Instagram account, shows that Defendant acknowledged Plaintiff as the Photo's author at the time of the alleged infringing activities. Yet, despite this recognition, Defendant at no time contacted Plaintiff to request permission or obtain a license to use the Photo in any manner.

42. Plaintiff's Photo features two people and was produced for editorial usage, which, according to common industry practices, permits dissemination within legitimate news or public

11

intertest contexts without the need for explicit consent from the individuals depicted. Despite this, Defendant, a global corporation well-versed in marketing law and practices, appropriated the Photo for commercial use – a sphere firmly regulated by legal standards that mandate obtaining waivers of rights or releases from recognizable individuals within the image to adhere to privacy and publicity rights laws.

43.     By using the Photo for promotional purposes without Plaintiff's consent, Defendant not only exposed Plaintiff to potential legal claims from the individuals depicted—recall, Will "Akuna" Robinson was only one of two people shown—but also diminished the Photo's intrinsic market value, even if the appropriate legal permissions are eventually secured. Forcibly associating the Photo with a specific brand (Merrell) dilutes its uniqueness and its commercial appeal, thereby impairing Plaintiff's prospects for future licensing opportunities.

44.     Shortly after Plaintiff became aware of Defendant's infringing uses of her Photo, Plaintiff emailed Will "Akuna" Robinson seeking contact information for Merrell. Subsequently, Merrell Senior Digital Marketing Associate Chandler Alberda emailed Plaintiff acknowledging that Defendant had published her Photo "without approval or licensing" and asking Plaintiff to send "pricing for licensing" the Photo. Alberda also noted that the post would be "archive[d]" pending a resolution. *See* Exhibit D attached hereto.

45.     Plaintiff responded to Alberda with an invoice for the nonconsensual commercial use of her editorial image reasonably based on other commercial licenses she has issued for use of her photographs.

46.     Despite requesting "pricing for licensing" from Plaintiff, neither Alberda nor anyone else representing Defendant ever responded to Plaintiff's reasonable license fee.

47.     Eventually, Plaintiff, through counsel, followed-up with a formal, DMCA-compliant takedown notice but was unable to resolve her claims against Defendant.

48.     For the reasons stated above, Defendant has, without license, permission, or legal excuse, copied, distributed, and displayed Plaintiff's Photo in violation of the Copyright Act.

**D. Background on Defendant**

49.     Defendant, a multi-national corporate entity with over two billion dollars of total assets, possesses a sophisticated knowledge about intellectual property rights.

50.     On information and belief, and as discussed by Defendant's most recent 10-K filing with the U.S. Securities and Exchange Commission, Defendant owns various intellectual property rights, including copyrights, trademarks, and patents, which are held for the purpose of protecting their brand names, product designs, technologies, and logos, as well as other proprietary materials associated with their extensive range of products.[6]

> **Trademarks, Licenses and Patents**
>
> The Company holds a significant portfolio of registered and common law trademarks that identify its branded products and technologies. The Company's owned trademarks include *Hush Puppies®*, *Wolverine®*, *Bates®*, *Bounce®*, *Chaco®*, *HYTEST®*, *Merrell®*, *Sperry®*, *Saucony®*, *Stride Rite®*, *Sweaty Betty®*, and related logos and design marks. The Company's Wolverine Leathers Division markets its pigskin leathers under trademarks such as *Silkee®* and *Weather-Tight®*. The Company has footwear marketing and distribution rights under the *Cat®* and *Harley-Davidson®* trademarks pursuant to license arrangements with the respective trademark owners. The *Cat®* license was recently renewed and the license term runs through December 31, 2028 and the *Harley-Davidson®* license term runs through December 31, 2023. Both licenses are subject to early termination for breach.
>
> The Company believes that consumers identify its products by the Company's trademarks and that its trademarks are valuable assets. The Company has a policy of registering its primary trademarks and vigorously defending its trademarks against infringement or other threats whenever practicable. The Company also holds many design and utility patents, copyrights and various other proprietary rights. The Company protects its proprietary rights under applicable laws.

51.     Defendant utilizes a copyright disclaimer on its websites, including the website for its Merrell footwear and apparel brand,[7] indicating that Defendant understands the importance of copyright protection and intellectual property.

---

[6] *Wolverine World Wide, Inc.*, 2022 Annual Report (*Form 10-K*), at 9, filed February 24, 2022, *available at*: https://www.wolverineworldwide.com/wp-content/uploads/2023/03/2022-Annual-Report.pdf

[7] *See*: https://www.merrell.com/US/en/content?caid=terms

> **2. Site Contents.** All materials on this Site are owned or licensed by Wolverine and/or its subsidiaries, affiliates and third-party providers, and are protected by United States and international intellectual property laws. The text, images, graphics, video files, and their arrangement on the Site are all subject to copyright and other intellectual property protection. The information, materials, and other contents of this Site may not be copied, displayed, distributed, licensed, modified, published, reposted, reproduced, reused, sold, transmitted, used to create a derivative work, or otherwise used for public or commercial purposes without the express written consent of Wolverine. Access to and use of the Site is solely for your personal, non-commercial use. You may download, copy, or print the contents of the Site for your personal reference only. No right, title, or interest in any of the materials or contents of the Site is transferred to you, and Wolverine reserves all rights not expressly granted in these Terms.

52. Defendant maintains an in-house marketing department for its array of brands, including Merrell.[8]

**Marketing**

The Company's marketing strategy is to develop brand-specific plans and related promotional materials that foster a consistent message for each of the Company's brands across the globe. Marketing campaigns and strategies vary by brand and are generally designed to target consumers in order to increase awareness of, and affinity for, the Company's brands. The Company's marketing typically emphasizes compelling brand stories and brand recognition associated with new and existing products, the performance, comfort and quality features and styles of our products within each of the Company's brands, as well as raising global brand relevance and awareness. The Company's brand marketing has an omni-channel approach and

includes various means of delivery, such as print and radio advertising, search engine optimization, social networking sites, event sponsorships, in-store point-of-purchase displays, promotional materials and sales and technical assistance.

53. Defendant's marketing department features a specialized digital marketing division focused on the brands' online presence, which is generally responsible for operating Defendants' brands social media accounts, including, upon information and belief, Merrell's Instagram account.[9]

The Company operates branded eCommerce sites that the Company believes are effective marketing tools to consumers. The Company maintains an active presence on a variety of global social media platforms, and the Company's digital marketing seeks to create demand among new consumers as well as connecting consumers to brand content and products.

54. Upon information and belief, Defendant's digital marketing team was in control of Merrell's Instagram account when it wrongfully published Plaintiff's Photo.

---

[8] *Wolverine World Wide, Inc.*, 2022 Annual Report (*Form 10-K*), at 7-8; *see also, e.g.,* https://careers.wolverineworldwide.com/category/marketing-jobs/25935/63365/1.
[9] *Wolverine World Wide, Inc.*, 2022 Annual Report (*Form 10-K*), at 8; *see also, e.g.*, https://careers.wolverineworldwide.com/job/rockford/digital-marketing-manager-saucony/25935/55528565968.

55. Because Defendant operates a global business that regularly contemplates the ownership, marketing, licensing, and sale of intellectual property (including by operating its own digital marketing division), it was aware, or at minimum, should have been aware, of Plaintiff's rights as a copyright holder and Defendant's responsibilities under the Copyright Act when it wrongfully used Plaintiff's Photo.

56. Defendant knew or should have known that its uses of Plaintiff's Photo constituted a violation of Plaintiff's intellectual property rights, and that the infringing uses were willful and reckless.

## V. CAUSE OF ACTION

## INFRINGEMENT OF COPYRIGHT PURSUANT TO 17 U.S. CODE § 106

57. Plaintiff incorporates herein by reference each and every allegation contained in each paragraph above.

58. Plaintiff is, and at all relevant times has been, the copyright owner with exclusive rights under United States copyright with respect to the Photo and the valid registration in Exhibit A.

59. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, display, copy and distribute her Copyrighted Photo under 17 U.S.C. §§ 106(1), (3), (4), and (5).

60. Defendant, without the permission or consent of Plaintiff, uploaded the copyrighted Photo to Defendant's Instagram account and Instagram Shop, distributing the Photo to the public and/or making the copyrighted Photo available for distribution to others through Defendant's Instagram account.

61. Defendant, without the permission or consent of Plaintiff, commercially appropriated Plaintiff's editorial Photo by forcibly associating it with one of Defendant's brands.

62. Defendant, without the permission or consent of Plaintiff, commercially appropriated Plaintiff's editorial Photo by forcibly embedding hyperlinks into the Photo promoting three footwear/apparel products offered by one of Defendant's brands, and which, when clicked, directed the viewer to an online platform where the products could be purchased.

63. Defendant has violated Plaintiff's exclusive rights of reproduction, distribution, and to make derivative works of her Photo.

64. Defendant never asked permission nor paid a licensing fee for the use of Plaintiff's copyrighted Photo despite Plaintiff operating a public website where she invited offers from potential licensors, Plaintiff maintaining her archive with a photo agency for the purpose of facilitating the licensing of her work, and Plaintiff operating a professional Instagram account where she displayed her work and invited offers from potential licensors.

65. Defendant never asked permission nor paid a licensing fee for the use of Plaintiff's copyrighted Photo despite Defendant knowing Plaintiff to be the Photo's author.

66. Defendant never asked permission nor paid a licensing fee for the use of Plaintiff's copyrighted Photo despite Defendant knowing Plaintiff maintained an Instagram where she could be contacted about the licensing of her work.

67. Defendant never asked permission nor paid a licensing fee for the use of Plaintiff's copyrighted Photo despite Defendant knowing Plaintiff was a professional photographer who licensed her work.

68. Plaintiff is informed and believes that the foregoing acts of infringement have been reckless and in total disregard of and with indifference to the rights to Plaintiff's copyrights and exclusive rights under copyright.

69. As a result of Defendant's infringements of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to an award of statutory damages pursuant to 17 U.S.C. § 504(c).

## VII. JURY TRIAL DEMANDED

70. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury of all the claims asserted in this Complaint so triable.

## VIII. RELIEF REQUESTED

71. WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a. Awarding Plaintiff damages derived from the infringing acts, in the amount permitted by law with respect to the Photo infringed, including actual damages or statutory damages for copyright infringements plus attorneys' fees and costs.

b. Granting Plaintiff injunctive and other equitable relief enjoining Defendant, its officers, agents, servants, and employees, and all those acting in concert with the aforementioned parties from directly or indirectly reproducing, publicly performing, publicly displaying, or distributing the copyrighted Photo to which Plaintiff has exclusive rights.

c. Disgorging all profits derived by Defendant that were obtained as a result of the conduct alleged herein.

d. For Defendants to be required to pay for damages caused by the loss and/or theft of the Photos that they failed to return to Plaintiff.

e. Awarding prejudgment interest to the maximum extent permitted by law.

f. Awarding such other and further relief as the Court may deem just and proper.

Dated: November 20, 2023.

                                      Respectfully submitted,

                                      *By: /s/ Bryan Hoben*
                                      HOBEN LAW
                                      Bryan D. Hoben, Esq.
                                      1112 Main Street
                                      Peekskill, New York 10566
                                      347-855-4008
                                      bryan@hobenlaw.com

                                      *Attorney for Plaintiff Iana Panich-Linsman*